**In re K–ROM CONSTRUCTION CORPORATION, Debtor.**

**K–ROM CONSTRUCTION CORPORATION, Plaintiff,**

**v.**

**George J. BEHLING, Jr. and Elaine C. Behling, Defendants.**

**Bankruptcy No. 82 B 20595.**
**No. 84 ADV. 6027.**

United States District Court,
S.D. New York.

Feb. 21, 1985.

Barr & Faerber, Spring Valley, N.Y., for debtor.

Jeffrey L. Sapir, Yonkers, N.Y., for defendants.

## DECISION ON COMPLAINT FOR BREACH OF CONTRACT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This case involves a non-core matter, which is related to a bankruptcy case under title 11, where the parties have consented on the record, as permitted under 28 U.S.C. § 157(c)(2), that the bankruptcy judge determine the controversy and enter an appropriate final order and judgment, that are subject to review under 28 U.S.C. § 158. The plaintiff is a Chapter 11 debtor which has brought this action to recover for work, labor and services provided by the plaintiff to the defendants' restaurant pursuant to a written contract between the parties. The defendants deny the plaintiff's claim and assert that the contract in question is a nullity because it calls for a usurious rate of interest.

FINDINGS OF FACT

1.  The plaintiff, K-Rom Construction Corporation, filed with this court its petition for reorganization under Chapter 11 of the Bankruptcy Code on September 29, 1982. Pursuant to 11 U.S.C. § 1108, the plaintiff is a debtor in possession authorized to operate its business as a general contractor in the construction of stores in shopping centers.

2.  The defendants, George J. Behling, Jr. and Elaine C. Behling, are husband and wife, who were the owners of a proposed restaurant to be located in the Galleria Mall, White Plains, New York and referred to as Foodworks, Inc.

3.  Pursuant to a written contract dated September 23, 1980, the plaintiff agreed to construct a store for the defendants in the White Plains Galleria Mall for $173,000 in accordance with the following schedule:

FIRST: An Escrow Account will be established, within seven (7) days of the signing of this contract, in the amount of ONE HUNDRED AND FIFTEEN THOUSAND ($115,000.00) Dollars.

SECOND: Forty-five (60KOR) days after this contract is initiated, a payment of TWENTY–SEVEN THOUSAND ($27,-000.00) Dollars will be payed by the Owner to the Company.

THIRD: The balance of this contract, THIRTY–ONE THOUSAND ($31,000.00) Dollars will be paid by the Owner to the Company in weekly installments in the amount of ONE THOUSAND ($1,000.00) Dollars per week. The first of these $1,000.00 installments will be due and payable SEVEN (7) DAYS after the store is open and conducting business. Interest charges on the unpaid balance will be computed on a monthly basis at a rate of TWO Per Cent (2%) above the applicable Prime Interest Rate, as established by the Nanuet National Bank.

4.  The parties to the contract were identified as follows:

PROJECT NAME: <u>FOODWORKS RESTAURANT</u>

ADDRESS: <u>Space. # 222 The Galleria Mall, White Plains, N.Y.</u>

THIS AGREEMENT made this 23rd day of September 1980 A.D. between K ROM CONSTRUCTION CORP., hereinafter called the Company and the Owners of FOODWORKS RESTAURANT, GEORGE BEHLING AND ELAINE BEHLING hereinafter called the Owner.

5. The defendants agreed to guaranty the payments to the plaintiff pursuant to the language in paragraph "FIFTH" as follows:

FIFTH: All payments and monies due are to be guaranteed by George Behling and Elaine Behling.

6. The contract was signed by the parties as follows:

K ROM CONSTRUCTION CORP.

By: s/ Kurt O. Rom
    Kurt O. Rom, President

By: s/ George Behling
    George Behling

By: s/ Elaine Behling
    Elaine Behling

7. On October 20, 1980, the plaintiff submitted an invoice to the defendants for $50,000 covering work, labor and services supplied to the project to date. Thereafter, the defendant, George J. Behling, Jr. signed a check on the account of Foodworks, Inc., dated October 29, 1980, payable to the order of the plaintiff in the sum of $35,000. However, the check was twice dishonored for insufficient funds. The defendants' bank then caused a certificate of protest to be issued with respect to the dishonored check.

8. It appears that the defendants expected to obtain financing for their venture from the father of George J. Behling, Jr. However, such financial support was not made available to them. The plaintiff was required to discontinue construction work after the defendants were unable to pay the plaintiff pursuant to the contract terms.

9. In November of 1980, the plaintiff filed with the Clerk of Westchester County, New York a notice under the New York Mechanic's Lien Law for $106,000, for labor and materials furnished to the defendants' space at the Galleria Mall, White Plains, New York.

10. On January 11, 1981, Foodworks, Inc. filed with this court a petition for reorganization under Chapter 11 of the Bankruptcy Code. In an affidavit sworn to on January 19, 1981, pursuant to Bankruptcy Rule XI–2, the defendant, Elaine C. Behling said:

The debtor commenced the construction of the interior of said store premises with the work and materials being performed and furnished by K ROM CONSTRUCTION CORP. as general contractor. Due to various circumstances and lack of completion expenses. the construction and preparation of the store for occupancy has been delayed. *However, two thirds (⅔) of said construction work has been completed.* (Emphasis added).

In schedule A annexed to her Rule XI–2 affidavit, defendant, Elaine C. Behling, listed the plaintiff as an unsecured creditor in the sum of $106,000, which claim was designated as "disputed."

11. In an attempt to reduce the contractual obligation, the co-defendant, George J. Behling, Jr., signed a proposed agreement, dated July 20, 1981, which reads in pertinent part as follows:

AGREEMENT

WHEREAS, GEORGE BEHLING and ELAINE BEHLING were the owners of FOODWORKS RESTAURANT at Space No. 222, Galleria Mall, White Plains, New York; and

WHEREAS, K ROM CONSTRUCTION CORPORATION of Virginia Avenue, West Nyack, New York, supplied certain labor and materials upon the premises of the owner on Space No. 222,

Galleria Mall, White Plains, New York, pursuant to an agreement made the 23rd day of September, 1980; and

WHEREAS, said GEORGE BEHLING and ELAINE BEHLING have personally guaranteed payment to K ROM CONSTRUCTION CORPORATION the sum due and owing said K ROM CONSTRUCTION CORPORATION for the labor and materials supplied; and

WHEREAS, K ROM CONSTRUCTION CORPORATION claims said GEORGE BEHLING and ELAINE BEHLING are duly indebted to K ROM CONSTRUCTION CORPORATION pursuant to said contract in an amount in excess of One Hundred Thousand ($100,000.00) Dollars; and

WHEREAS, K ROM CONSTRUCTION CORPORATION has agreed to release said GEORGE BEHLING and ELAINE BEHLING from any personal responsibility with regard to said contract with FOODWORKS upon the following terms and conditions;

NOW, THEREFORE, the parties hereto agree as follows:

1. K ROM CONSTRUCTION CORPORATION shall reduce its claim against GEORGE BEHLING AND ELAINE BEHLING personally to the sum of Fifty Thousand ($50,000.00) Dollars, provided, however, said GEORGE BEHLING and ELAINE BEHLING Shall pay to K ROM CONSTRUCTION CORPORATION the sum of Fifty Thousand ($50,000.00) Dollars by payment upon the signing of this agreement of the sum of FIVE THOUSAND ($5,000.00) Dollars and the balance of Forty-five Thousand ($45,000.00) Dollars, including interest as agreed upon which is reflected in the following installment payments, shall be paid as follows: $5,400.00 each year commencing one year from this date and then for eight years thereafter.

However, the proposed agreement was never signed by the co-defendant, Elaine C. Behling, nor by the plaintiff.

12. In light of the fact that the defendant, Elaine C. Behling, stated in the Rule XI–2 affidavit sworn to on January 11, 1981, that the plaintiff completed two-thirds of the construction work, it is apparent that the remaining $31,000 portion of the contract, which called for interest charges at the rate of two percent over the applicable prime rate established by the Nanuet National Bank, never came into effect. This point is further evidenced by the fact that the plaintiff claims that it is owed $106,000, less a $5,000 deposit tendered as part of the proposed settlement, dated July 20, 1981, for a total debt of $101,000, against a contract figure of $173,000. The $31,000 balance, against which interest charges would accrue, would come into effect only after $142,000 of the contract had been satisfied. Accordingly, no portion of the plaintiff's claim includes any interest charges.

13. It is amply established that while the plaintiff was to furnish labor and materials for the construction of a restaurant which was to be operated as Foodworks, Inc., the plaintiff dealt with the defendants as individuals. They signed the September 23, 1980 contract in their individual capacity, in which they personally guaranteed the payments individually. This personal liability was acknowledged by George J. Behling, Jr. when he signed the proposed agreement dated July 20, 1981. Additionally, the defendants conceded this point in paragraph 5 of their answer to the complaint, which states:

That said contract annexed to the complaint as Exhibit A, was duly executed by the defendants individually.

14. The plaintiff has established by a preponderance of the evidence that it furnished work, labor and materials in the sum of $106,000, less the $5000 deposit, for the construction of a restaurant in the White Plains Galleria Mall pursuant to a written contract signed by the defendants individually, under which they personally guaranteed payment to the plaintiff.

## DISCUSSION

### JURISDICTION—CONSENT TO FINAL ORDER

The court's jurisdiction to hear and determine this case starts with 28 U.S.C. § 1334(a) and (b), pursuant to which "the district courts ... have original and exclusive jurisdiction of all cases under title 11" and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." Although the district court is authorized to exercise jurisdiction in this case, the authority to hear and determine the contested issues has been delegated to this court pursuant to 28 U.S.C. § 157(a), which provides:

Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

In accordance with 28 U.S.C. § 157(a), the United States District Court for the Southern District of New York entered an order on July 10, 1984 referring all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 to the bankruptcy judges in this district. In the event that a core case is involved as described under 28 U.S.C. § 157(b)(2), the bankruptcy judge may enter "appropriate orders and judgments, subject to review under section 158...."

This is not a core case. The plaintiff-debtor's action to recover damages based upon the defendants' contractual liability is clearly not within the concept of core proceedings, as illustrated under 28 U.S.C. § 157(b)(2). Accordingly, reference must be had to 28 U.S.C. § 157(c)(1), which provides:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

In a non-core case a bankruptcy judge need not submit proposed findings of fact and conclusions of law to the district court for a de novo review if the parties to the proceedings consent that the matter be treated in the same fashion as a core proceeding. This authority is contained in 28 U.S.C. § 157(c)(2) which provides:

Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

In view of the fact that this bankruptcy case and all proceedings arising in or related to this case have already been referred to this court pursuant to the district court order of July 10, 1984, it remains to be determined whether the consent of all parties to the entry of a final order by a bankruptcy judge in this related non-core case must be given before a district court judge or before a bankruptcy judge.

Section 157(c)(2) is silent as to the time or place where the required consent must occur. Manifestly, this district's blanket referral order of July 10, 1984 does not provide that the parties' consent to the entry of a final order by a bankruptcy judge should be submitted to a district judge. It was never contemplated that the parties in a non-core case referred to a bankruptcy judge would have to return to a district court judge in order to place on the record their consent to the entry of a final order by the bankruptcy judge. Such a practice would cause unnecessary delay and confusion and would be tantamount to sheer administrative folly. During the hiatus following the Supreme Court's decision in *Northern Pipeline Construction Co. v.*

*Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and before the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 on July 10, 1984, the United States District Court for the Southern District of New York had adopted the so-called Emergency Rule. Pursuant to this rule all bankruptcy cases and all civil proceedings related to bankruptcy cases were referred to the bankruptcy judges of this district for determination under the aegis of the district court. The bankruptcy judge was required to submit to the district court proposed findings of fact and conclusions of law in so-called "related to" proceedings. However, the bankruptcy judge was authorized to enter final orders in "related to" cases if all the parties gave their consent to such procedure. *See* Emergency Rule I § (d)(3)(B). The Emergency Rule was supplemented by rules adopted by the Southern District Board of Judges on January 14, 1983, which included the following pertinent provisions:

(b) *Designation on Papers:* Counsel should include in the caption of all papers (except proofs of claim) *filed in the bankruptcy court* a statement whether the matter is a related proceeding within the meaning of Emergency Bankruptcy Rule I(d)(3)(A). (Emphasis added).

(c) *Consent to Entry of Judgment or Order:* In a related proceeding within the meaning of Emergency Bankruptcy Rule I(d)(3)(A), consent to the entry of judgment or a dispositive order by the bankruptcy judge, in lieu of entry by a district judge, which consent is authorized by (d)(3)(B) of Emergency Bankruptcy Rule I, may be evidenced by counsel's signature or the signature of a party not represented by counsel on the proposed order or judgment or by a separate stipulation or may be made in open court on the record. Any party submitting a proposed dispositive order or judgment shall certify whether consent to the bankruptcy judge's entry in lieu of entry by a district judge

has been obtained from all necessary parties.

The required consent was given in the bankruptcy court and not in the district court because the referral of the entire bankruptcy case to the bankruptcy court usually preceded the commencement of a proceeding related to that bankruptcy case. Thus, pursuant to section (b) of the January 14, 1983 order, the statement by counsel in the caption that the action involved a related case had to be filed in the bankruptcy court. Similarly section (c) required that the proposed dispositive order submitted in the bankruptcy court should be evidenced by the signature of counsel or a party not represented by counsel, or should be made in open court on the record. Manifestly, the open court record is that of the bankruptcy court where the case was heard. There appears to be no compelling reason why the procedure should be any different under 28 U.S.C. § 157(c)(2).

■ Accordingly, the consent by all of the parties to the entry of a final order by a bankruptcy judge was validly placed on the record in the bankruptcy court when this non-core case was commenced.

## USURY DEFENSE

■ The defendants maintain that a contract that calls for interest at the rate of two percent over prime is usurious, thereby rendering the contract null and void. However, this position elides the fact that the parties never reached the point where the plaintiff could charge any interest for the work, labor and services which it supplied. The defendants' indebtedness to the plaintiff represents the contract price solely for the work, labor and services furnished by the plaintiff. This portion of the contract reflected neither a loan nor a forbearance of money. The existence of either a loan or a forbearance of money is a prerequisite for a claim of usury because Section 5–501(2) of the New York General Obligations Law proscribes usury as follows:

No person or corporation shall, directly or indirectly, charge, take or receive any

money, goods or things in action as interest on the *loan or forbearance* of any money, goods or things in action at a rate exceeding the rate ... prescribed.

N.Y.Gen.Oblig.Law § 5–501(2) (McKinney Supp.1984–1985) (emphasis added). As stated in the leading case in New York on this subject:

> It is a fundamental doctrine governing the law of usury that the defense must be founded upon a loan or forbearance of money. If neither of these elements exists there can be no usury, however unconscionable the contract may be.

*Orvis v. Curtiss*, 157 N.Y. 657, 661, 52 N.E. 690, 691 (1899). *See also Title Guaranty & Surety Co. v. Klein*, 178 Fed. 689, 691 (3d Cir.1909); *Zachary v. R.H. Macy & Co., Inc.*, 31 N.Y.2d 443, 457, 340 N.Y.S.2d 908, 918, 293 N.E.2d 80, 90 (1972); *GTP Leisure Products, Inc. v. Cannella*, 58 A.D.2d 1040, 1041, 397 N.Y.S.2d 292, 293 (4th Dep't 1977).

■ Moreover, the evidence reveals that to the extent that the contract calls for any interest to be paid to the plaintiff, the amount to be paid by the defendants would be the same two percent over prime that the plaintiff was required to pay to its bank to finance the job in question. In effect, the contract called for the plaintiff to lend or sell its credit to the defendants in order to finance the last portion of the work to be performed. It is settled law that one who in good faith lends or sells his credit to another can charge any sum for such transaction without rendering the transaction usurious, even though the amount to be paid is more than the legal rate of interest, as long as the transaction is not a cloak or artifice to conceal usury. *Gilbert v. Warren*, 56 A.D. 289, 292, 67 N.Y.S. 978, 980 (1st Dep't 1900), *aff'd*, 171 N.Y. 665, 64 N.E. 1121 (1902) (mem.); 32 N.Y. Jurisprudence, *Interest and Usury* § 48 (1963). Accordingly, the defendants' usury defense will not defeat the plaintiff's right to recover for the work, labor and services provided to the defendants under the contract in question.

## MITIGATION OF DAMAGES

■ The defendants also urge that the plaintiff is under a duty to mitigate its damages and that this duty includes crediting the defendants for a portion of the work that the plaintiff saved when it constructed a store on the same site for another entity who rented the space after the defendants withdrew from the project. The fact that the plaintiff was engaged by the new tenant to construct a store on the same site does not mean that the defendants are entitled to share in any portion of the proceeds from the plaintiff's efforts. Presumably the plaintiff was paid by the new tenant for the reasonable value of the work, labor and services furnished. If any saving in construction was achieved as a result of any of the plaintiff's work for the defendants, such saving benefitted the new tenant and not the plaintiff. The fact that the plaintiff's next job after the defendants' default involved construction work for the new tenant at the same premises does not in any way implicate the doctrine of mitigation of damages or entitle the defendants to share in any portion of the plaintiff's compensation. The mitigation of damages concept might have come into play if the plaintiff chose not to take on another job and, instead, added the lost time to the damages sued upon in its complaint, which did not occur in this case.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter of this action and may enter a final order in accordance with the consent of all of the parties.

■ 2. The plaintiff established by a preponderance of the evidence that the defendants are individually liable to it for the work, labor and services furnished by the plaintiff for the construction of a store in the Galleria Mall in White Plains, New York.

3. The defendants' liability to the plaintiff under the contract in question amounts to $106,000, less the $5,000 payment, for a

net sum of $101,000, for which the plaintiff is entitled to a judgment.

4.  The defense of usury has not been sustained by the defendants.

SUBMIT A JUDGMENT on notice in accordance with the foregoing findings and conclusions.