In re **FRANKLIN COMPUTER CORPORATION (Jointly administered with Franklin Technologies, Inc. No. 84–02017), Debtor.**

**FRANKLIN COMPUTER CORPORATION,**
Plaintiff,

v.

**APPLE COMPUTER, INC., Defendant,**

and

**United States of America, and Official Unsecured Creditors' Committee of Franklin Computer Corp., Intervenors.**

Bankruptcy No. 84–02016G.
Adv. No. 86–0120G.

United States Bankruptcy Court,
E.D. Pennsylvania.

May 21, 1986.

Marvin Krasny, Myron A. Bloom, Adelman Lavine Krasny Gold & Levin, Philadelphia, Pa., for debtor/plaintiff, Franklin Computer Corp.

Edward B. Cloues, II, Morgan, Lewis & Bockius, Philadelphia, Pa., for defendant, Apple Computer, Inc.

Edward S.G. Dennis, Jr., U.S. Atty., Virginia Powel, Asst. U.S. Atty., Philadelphia, Pa., and Edwin Meese, III, Atty. Gen., and Gregory Harrison, Com. Litigation, Dept. of Justice, Washington, D.C., for intervenor, U.S. of America.

Michael A. Bloom, Cohen Shapiro Polisher Shiekman & Cohen, Philadelphia, Pa., for intervenor, Official Unsecured Creditors' Committee Franklin Computer Corp.

## OPINION

EMIL F. GOLDHABER, Chief Judge:

The defendant in this adversary complaint moves for its dismissal, alleging that we lack subject matter jurisdiction. Based on the rationale expressed below, we conclude that we have the requisite jurisdiction and will therefore deny the motion.

The facts of this case are as follows:[1] The debtor is a manufacturer of computers and related equipment. A major portion of its business is based on the manufacture and sale of consoles which are compatible with the defendant's ("Apple") brand of computers.

In 1982 Apple instituted suit against the debtor in the United States District Court for the Eastern District of Pennsylvania alleging copyright and patent infringement. The suit culminated in a decision by the Court of Appeals for the Third Circuit which held that operating systems programs, such as those on which Apple brought suit, could be copyrighted. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240 (3d Cir.1983), *cert. dis.*, 464 U.S. 1033, 104 S.Ct. 690, 79 L.Ed.2d 158 (1984). The Court of Appeals remanded the matter to the district court for further proceedings. However, the parties resolved the suit by a settlement agreement ("the Settlement Agreement") dated December 30, 1983. Because the Settlement Agreement did not reach the issue of Apple's allegations of patent infringement, Apple contemporaneously issued a letter ("the Side Letter") to Franklin agreeing not to sue for infringement on the two patents at issue in the litigation.

Under the Settlement Agreement the debtor was obliged to submit to Apple any programs which the debtor intended to sell as substitutes of Apple's programs. The Settlement Agreement also provided that any objections to the programs be lodged within 60 days after Apple's receipt of a program submitted by the debtor.

Due to the financial burden of the litigation with Apple, as well as numerous other causes, the debtor filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code") on June 21, 1984. Shortly thereafter the debtor filed a proposed liquidating plan of reorganization ("the Plan") which provided authority for, *inter alia*, (1) the debtor's shareholders to finance litigation against Apple in order for them to reap the benefit of any recovery and (2) the liquidation of all tangible and intangible assets with distribution to unsecured creditors.

Hoping to avert future litigation, Apple commenced negotiations with the debtor. These discussions resulted in an agreement in 1984 ("the 1984 Agreement") which pro-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

vided, *inter alia*, that Apple would not sue the debtor for infringement of the two patents at issue in the earlier agreement and for the mutual release of known causes of action. The debtor filed a motion for approval of the 1984 agreement which we granted. Based on the agreement the debtor also filed an amended plan of reorganization ("the Amended Plan") which provided for a continuation of the debtor's business, the debtor's retention of all intangible rights, including the right to use the patents at issue, and distribution of the debtor's stock to creditors. The Amended Plan also stated that the bankruptcy court would retain jurisdiction to resolve disputes under the Amended Plan.

Apple filed a proof of claim against the debtor in the amount of $656,250.00, which figure was the subject of an agreement between the debtor and Apple. Within two weeks we confirmed the plan. Pursuant to the Amended Plan, Apple received a cash dividend and stock in the debtor. Apple subsequently sold the stock.

Under the terms of the Amended Plan the debtor remained in business and, using technology retained under that plan, it developed for import into the United States its ACE 2000 series of computers. Due to the previous issuance of a general exclusion order ("the Exclusion Order"), the United States Customs Service ("Customs") barred the debtor from importing ACE 2000 computers into this country since the 2000 series computers utilized the two patents which were the subject of litigation between Apple and the debtor.

On the basis of the outstanding Exclusion Order the debtor commenced the instant adversary proceeding in this court requesting, *inter alia*, that Apple inform Customs that it should not exclude from the country the 2000 series computer. Both the United States and the Creditors' Committee have intervened in this matter. Apple has filed a motion for dismissal of the complaint which is the subject of our inquiry today.

At this juncture the Amended Plan has been confirmed, as stated above, but the debtor has yet to substantially consummate that plan. The case has not been closed since there are numerous activities still being pursued, such as contesting proofs of claim and collecting prepetition accounts receivable.

As we have heretofore stated, the questions presented are whether we have jurisdiction to hear this action and whether the 1984 amendments to the Bankruptcy Act of 1978 are unconstitutional. The resolution of these queries is aided by a review of the history of the jurisdiction of the bankruptcy court since the passage of the Bankruptcy Reform Act of 1978 ("the 1978 Act").

With the passage of the 1978 Act, Congress vested the district courts with "original and exclusive jurisdiction of all cases *under* title 11." 28 U.S.C. § 1471 (repealed) (emphasis added). The district court also had "original but not exclusive jurisdiction of all civil proceedings *arising under* title 11 or *arising* in or *related to* cases under title 11." § 1471(b) (repealed) (emphasis added). The "bankruptcy court for the district in which a case under title 11 [was] commenced [exercised] all of the jurisdiction conferred by [§ 1471] on the district courts." § 1471(c) (repealed). Thus, all jurisdiction under these provisions was effectively lodged in the bankruptcy court. The legislative history of the 1978 act summarized the scope of the power available to the bankruptcy judge under that Act:

§ 1471. Jurisdiction.

Subsection (a) of this section gives the proposed bankruptcy courts original and exclusive jurisdiction of all cases under title 11. The jurisdiction granted under this provision is of the whole bankruptcy case. Subsection (b) governs jurisdiction of proceedings in the case. This subsection dictates that all bankruptcy cases are commenced in the United States bankruptcy courts.

Subsection (b) is a significant change from current law. It grants the bankruptcy court original (trial), but not exclusive, jurisdiction of all civil proceedings arising under title 11 or arising un-

der or related to cases under title 11. *This is the broadest grant of jurisdiction to dispose of proceedings that arise in bankruptcy cases or under the bankruptcy code. Actions that formerly had to be tried in State court or in Federal district court, at great cost and delay to the estate, may now be tried in the bankruptcy courts.* The idea of possession or consent as the sole bases for jurisdiction is eliminated. The bankruptcy court is given in personam jurisdiction as well as in rem jurisdiction to handle everything that arises in a bankruptcy case.

The jurisdiction granted is of all proceedings arising under title 11 or arising under or related to a case under title 11. The bill uses the term "proceeding" instead of the current "matters and proceedings" found in the Bankruptcy Act and rules. The change is intended to conform the terminology of title 28, under which anything that occurs within a case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law. It also includes any disputes related to administrative matters in a bankruptcy case.

The use of the term "proceeding," though, is not intended to confine the bankruptcy case. *Very often, issues will arise after the case is closed, such as over the validity of a purported reaffirmation agreement, proposed 11 U.S.C. 524(b), the existence of prohibited post-bankruptcy discrimination, proposed 11 U.S.C. 525, the validity of securities issued under a reorganization plan, and so on. The bankruptcy courts will be able to hear these proceedings because they arise under title 11.*

The phrase "arising under" has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11. For example, a claim of exemptions under 11 U.S.C. 522 would be cognizable by the bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. 525. Any action by the trustee under an avoiding power would be a proceeding arising under title 11, because the trustee would be claiming based on a right given by one of the sections in sub-chapter III of chapter 5 of title 11. Many of these claims would also be claims arising under or related to a case under title 11. Indeed, because title 11, the bankruptcy code, only applies once a bankruptcy case is commenced, any proceeding arising under title 11 will be in some way "related to" a case under title 11. In sum, the combination of the three bases for jurisdiction, "arising under title 11," "arising under a case under title 11," and "related to a case under title 11," will leave no doubt as to the scope of the bankruptcy court's jurisdiction over disputes.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 445–46 (1977), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 6400–01.

▉ Prior to the passage of the 1978 Act, Congress voiced concern that the breadth of the jurisdiction accorded the bankruptcy court under proposed § 1471 would run afoul of constitutional prohibitions. *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 62 n. 12, 102 S.Ct. 2858, 2866 n. 12, 73 L.Ed.2d 598 (1982). Congressional anxiety over the matter was ultimately justified by the Supreme Court's decision in *Marathon*. In that case a debtor that filed for reorganization commenced suit in bankruptcy court against a defendant "for alleged breaches of contract and warranty, as well as for alleged misrepresentation, coercion, and duress." *Marathon*, 458 U.S. at 56, 102 S.Ct. at 2863. The bankruptcy court denied the defendant's motion to dismiss but the district court reversed. On appeal the Supreme Court held that the bankruptcy court could not constitutionally adjudicate the debtor's state law claims because the

jurisdiction given to the bankruptcy courts under § 1471 was too broad since the bankruptcy judges, being Article I[2] judges, lack the protections of life tenure and unreducable compensation which guarantees inhere to the offices of Article III judges. The Supreme Court held that § 1471 "has impermissibly removed most, if not all, of 'the essential attributes of judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct." *Marathon*, 458 U.S. at 87, 102 S.Ct. at 2880. The decision was predicated on the doctrine of separation of powers among the three branches of the federal government. The Supreme Court feared that the Article I bankruptcy judges, having been given virtually co-extensive jurisdiction with the district courts in all matters related to a pending bankruptcy case, would be subject to excessive political pressure from the legislative and executive branches of government, to the derogation of the Article III judges, since bankruptcy judges do not have the tenure and salary guarantees of Article III judges. *Marathon*, 458 U.S. at 83, 102 S.Ct. at 2877. *Marathon did not* hold that Article I bankruptcy judges could not constitutionally adjudicate state law claims, *although* the question of the resolution of state created rights in bankruptcy

court presented the Supreme Court with the factual *vehicle* for declaring the unconstitutionality of § 1471 in *Marathon*. "[I]t is clear that under the actual holding in *Marathon*, the constitutional ability of a bankruptcy court to determine state law issues is to be determined by the nature and extent of control by Article III courts and whether there is a nexus between the proceeding involving a state law cause of action and the bankruptcy estate." *Lesser v. A–Z Assoc. (In Re Lion Capital Group)*, 46 B.R. 850, 856. (Bankr.S.D.N.Y.1985). Thus, an Article I bankruptcy judge cannot constitutionally adjudicate state created rights when its jurisdiction is virtually coextensive with that of the district court, but such constitutional infirmity vanishes when the jurisdiction of the bankruptcy judge has been rendered sufficiently inferior to that of the district court by an act of Congress. After such Congressional action the bankruptcy court could resolve questions of state created rights. Any other resolution of the quandary would be impractical and therefore at odds with the power embodied in the Bankruptcy Clause[3] of the Constitution since virtually every bankruptcy case entails the alteration or nullification of some state created rights.[4]

**2.** Article I judges are those whose offices are created through power ascribed to Congress in Article I, § 8 of the U.S. Constitution which authorizes Congress "to constitute tribunals inferior to the Supreme Court." These courts are commonly referred to as "legislative courts" as opposed to Article III courts which derive their powers from Article III which states:

ARTICLE III

Section 1. The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may *from time to time* ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behavior, and shall, at stated Times, receive for their Services a Compensation, which shall not be dimished during their Continuance in Office.

*See also, Marathon*, 458 U.S. at 70, 102 S.Ct. at 2871.

**3.** The Bankruptcy Clause provides that, "The Congress shall have the power . . . to establish uniform laws on the subject of bankruptcies throughout the United States."

**4.** [T]he distinction between claims based on state law and those based on federal law disregards the real character of bankruptcy proceedings. The routine in ordinary bankruptcy cases now, as it was before 1978, is to stay actions against the bankrupt, collect the bankrupt's assets, require creditors to file claims or be forever barred, allow or disallow claims that are filed, adjudicate preferences and fraudulent transfers, and make pro-rata distributions to creditors, who will be barred by the discharge from taking further actions against the bankrupt. The crucial point to be made is that in the ordinary bankruptcy proceeding the great bulk of creditor claims are claims that have accrued under state law prior to bankruptcy—claims for goods, sold, wages, rent, utilities and the like. "[T]he word *debt as used by the Act is not* confined to the technical common law meaning but . . . extends to liabilities arising out of breach of contract . . . to torts . . . and to taxes owing to the United States or state or local government." 1 Collier on Bankruptcy 88 (14th ed. 1976). Every such claim must be filed and its validity is subject to adjudication by the bank-

For instance, through the entry of a discharge of debts, which is typically perceived as the *sine qua non* of bankruptcy, creditors' dischargeable claims are extinguished even though they may arise through, or as, state created rights. The resolution of objections to proofs of claim likewise necessitates an adjudication of state created rights, as do many other disputes in bankruptcy.

In *Marathon* the Supreme Court ordered that its ruling apply prospectively and stayed its effective date for several months. After the last of various extensions of the stay of that ruling expired, the district courts across the country adopted, with occasional modifications, an emergency rule that was suggested by the Judicial Conference. This rule gave the bankruptcy judges ostensible authority to continue hearing bankruptcy matters. One and one-half years later Congress, realizing, *inter alia*, that bankruptcy courts must be accorded the power to adjudicate certain disputes arising under state law, passed the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("the 1984 Act"). Pub.L. 98–353, 98 Stat. 333 (1984).

The jurisdictional provisions of this act are applicable to cases which were pending on the date of the passage of the statute or were filed thereafter and, consequently, they govern the disposition of the instant matter. Pub.L. 98–353, § 122(a), 98 Stat. 333, 346 (1984). The 1984 Act amended or added several provisions of title 28 of the United States Code to grant the bankruptcy court jurisdiction, among which are 28 U.S.C. §§ 157 and 1334.

Under 28 U.S.C. § 1334 the United States District Courts have exclusive and original jurisdiction of all cases under title 11 of the United States Code. Ostensibly, a bankruptcy petition may only be filed in federal district court. That court would likewise have exclusive jurisdiction over all actions necessarily related to the administration of the bankruptcy case. § 157(b)(2)(A). The district courts are also given original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. § 1334(b). The grant of jurisdiction extends over all property of the debtor and of the estate, wherever located, as of the commencement of the case. 28 U.S.C. § 1334(d). On matters not inherently germaine to the administration of the bankruptcy the district court may abstain on motion of a party if the cause of action under litigation is based on a state law claim or state law cause of action, if an action is commenced and can be timely adjudicated in an appropriate state court forum. This provision is known as the "mandatory abstention provision." 28 U.S.C. § 157(b)(4). Section 1334(c)(2) of title 28 of the United States Code also provides that a decision made under the mandatory abstention provision "is not reviewable by appeal or otherwise."

Under 28 U.S.C. § 157(a) each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 shall be referred to the bankruptcy judges for that district. By local rule our district court has done so, as have apparently all other district courts in the country. Through § 157(b)(1) the bankruptcy judge may hear and enter final orders on all core proceedings arising under title 11. Under § 157(c)(1) a bankruptcy judge may hear noncore matters that are related to a case under title 11 but, absent consent[5] of all parties to the dispute, he

---

ruptcy court. The existence and validity of such claims recurringly depends on state law. *Hence, the bankruptcy law is constantly enmeshed in state law issues.*

The new aspect of the Bankruptcy Act of 1978, in this regard, therefore, is not the extension of federal jurisdiction to state law claims, but its extension to particular kinds of state law claims, such as contract case against third parties or disputes involving property in the possession of a third party.

*Marathon,* 458 U.S. at 96, 102 S.Ct. at 2884 (White, J., dissenting) (emphasis added).

5. In a noncore matter the bankruptcy judge may enter final orders when the parties to the dispute have consented. § 157(c)(2). The consent may be entered in the district court or the bankruptcy court. § 157(c)(2); *K–Rom Construction Corp. v. Behling (In re K–Rom Construction Corp.),* 46 B.R. 745, 748, 12 B.C.D. 909, 912 (S.D.N.Y.1985).

may not enter final orders in those disputes but must submit proposed findings of fact and conclusions of law to the district court for entry of final orders. Section 157(b)(2) [6] provides a nonexhaustive list of core proceedings the more important of which are 1) all matters concerning the administration of the bankruptcy estate, 2) counterclaims against the estate by persons or entities filing claims against the estate, 3) proceedings for turnover of property of the estate and 4) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or equity holder relationship § 157(b)(2)(A), (C), (E) and (O). Notwithstanding other provisions of § 157(b), personal injury torts and wrongful death claims may not be heard by a bankruptcy court but must be resolved by the district court or a state court. § 157(b)(5).

Hence, returning to the particulars of this case, the gravamen of the complaint is that Apple breached an agreement, approved by this court, which agreement was incorporated by reference in the Amended Plan and is essential to the consummation of the debtor's reorganization. In essence, the agreement authorized the debtor to use two of Apple's patented computer programs. Without enforcement of its right to use the programs, the reorganization appears seriously threatened, if not doomed.

█  Applying the above authority to the facts of this case it is clear that the dispute is, at the very least, a civil proceeding "arising in or related to [a] case[ ] under title 11" within the meaning of 28 U.S.C. § 1334(b). Thus, the basic issue is whether the contest is a core proceeding, thus allowing us to enter final orders on the matter. We conclude that it is a core proceeding on any of three independent grounds, the first of which is 28 U.S.C. § 157(b)(2)(A). *Bobroff v. Continental Bank (In Re Bobroff)*, 766 F.2d 797 (3d Cir.1985); *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir.1984).

█  This subsection, § 157(b)(2)(A), provides that "matters concerning the administration of the estate" are core proceedings. The substance of the dispute before us is the interpretation of an agreement ap-

6. **§ 157 Procedures**

(a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate.

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interest for the purposes of confirming a plan under chapter 11 or 13 of title 11 but not the liquidation or estimation of contigent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(a) and (b) (in part).

proved by this court, which rendered feasible the reorganization of the debtor. As such, this dispute is inextricably interwoven with the administration of the estate and, hence, the proceeding is a core matter under § 157(b)(2)(A).

■ The second basis for concluding that this is a core matter is § 157(b)(2)(C) which embraces "counterclaims by the estate against persons filing claims against the estate." In this reorganization Apple filed a proof of claim, and several courts have held that this constitutes the filing of a counterclaim against the estate. *See, e.g. Marketing Resources Int. v. PTC Corp. (In Re Marketing Resources Int. Corp.),* 43 B.R. 71, 72 (Bankr.E.D.Pa.1984). Ergo, this dispute is a core action under § 157(b)(2)(C).

■ Section 157(b)(2)(M) provides our third basis for holding that the instant conflict is a core proceeding since it states that core matters include disputes on "orders approving the use or lease of property [of the estate], including the use of cash collateral." The agreement at issue, which we approved by court order, authorized the debtor to utilize two of Apple's patented programs. The rights to use these programs were property of the estate and hence, this action is a core proceeding. *Reilly v. Nettie Lee Shops of Bristol, Inc. (In Re Nettie Lee Shops of Bristol, Inc.),* 49 B.R. 946 (Bankr.W.D.Va.1985).

■ Having concluded that this matter is a core action, we must now confront Apple's challenge to the constitutionality of the changes in the Bankruptcy Reform Act by the Bankruptcy Amendments and Federal Judgeship Act of 1984. We hold that the 1984 Act is constitutional. *See, e.g., Nordberg v. Republic National Bank of Miami* (In Re Chase & Sanborn Corp.), 51 B.R. 733 (Bankr.S.D.Fla.1985).

We will accordingly enter an order denying Apple's motion for dismissal.