In re NORTHWEST EXPLORATION COMPANY, Debtor.

Thomas E. ENGLISH, Trustee for the Northwest Exploration Company Creditors Trust, Plaintiff,

v.

VALERO HYDROCARBONS COMPANY, a corporation, et al., Defendants.

Bankruptcy No. 82–01534.
Adv. No. 86–0284.

United States Bankruptcy Court, N.D. Oklahoma.

March 26, 1987.

Thomas E. English, Tulsa, Okl., Trustee, for Northwest.

## ORDER

JAMES E. RYAN, Bankruptcy Judge.

The present adversary proceeding originated as a turnover action brought by THE NORTHWEST EXPLORATION COMPANY CREDITORS TRUST (NORTHWEST) against VALERO HYDROCARBONS COMPANY (VALERO). NORTHWEST was created pursuant to a confirmed Plan of Reorganization, while VALERO is the purchaser of production from the Doxey Wells and has suspended payments on production proceeds. NORTHWEST requested declaratory judgments against the present movants and others for amounts allegedly not paid by them pursuant to NORTHWEST'S Second Amended Plan.

This Court conducted a Pre-Trial Conference and raised, sua sponte, some very relevant jurisdictional concerns. Motions To Dismiss the adversary, with corresponding Briefs, were subsequently filed by THE BOB HANCOCK TRUST (HANCOCK), FIRST NATIONAL BANK OF AMARILLO (FIRST), BUFFALO ROYALTY CORPORATION (BUFFALO) and BUFFALO ROYALTY 1981–I DRILLING PROGRAM (BUFFALO 1981–I). NORTHWEST, has filed a Brief in opposition to the Motions To Dismiss.

After review of the Briefs, the file, and the relevant exhibits, we declare the following:

## FINDINGS OF FACT

■ 1. This Court has jurisdiction over the interpretation and enforcement of a confirmed Plan pursuant to 28 U.S.C. § 157(b); *In Re Franklin Computer Corp., Franklin Computer Corp. v. Apple Computer, Inc.*, 60 B.R. 795, 14 B.C.D. 516 (Bankr.E.D.Pa.1986).

2. The relationship between the parties originated with a Participation Agreement (P/A) dated August 5, 1981. In the Agreement, NORTHWEST sold to BUFFALO a Working Interest percentage in a "Drilling Prospect" portions of which later came be to known as the Doxey Prospect (Doxey). On the same day, the parties executed a Model Form Operating Agreement. The contract area was: "Doxey Prospect Section 7–10N–23W" in Beckham County, Oklahoma. NORTHWEST was designated as Operator of the oil and gas leases. Model Form Operating Agreements on the remaining Doxey Prospects were subsequently executed between NORTHWEST as operator and other parties, such as HANCOCK, as non-operators. The Agreements contained substantially the same provisions as the August 5th Operating Agreement.

The rights and liabilities of the parties are established by the terms of the Operating Agreements. As an example, the Operating Agreement of August 5, 1981 provides in Article VII., Part A:

"The liability of the parties shall be several, not joint or collective. Each party shall be responsible only for its obligations, and shall be liable only for its proportionate share of the cost of developing and operating the contract area. Accordingly, the liens granted among the parties in Article VII. B. are given only to secure the debts of each severally. It is not the *intention* of the *parties to*

*create, nor shall this agreement be construed as creating a mining or other partnership or association or to render the parties liable as partners."* (Emphasis added)

This Article evidences the parties' specific intent to establish NORTHWEST as a creditor and the non-paying, non-operator as a debtor. Creation of a partnership is specifically denied, presumably in an effort to prevent creation of joint obligations on debts incurred by either party inside or outside of the Operating Agreement. Such intent is concreted by the provisions of Article VII. B. as follows:

"Each non-operator grants to Operator a *lien* upon its oil and gas rights in the contract area, and a *security interest* in its share of the oil and or gas when extracted and its interest in all equipment to secure payment of its share of expense ... To the extent that Operator has a *security interest* under the *Uniform Commercial Code of the State,* Operator shall be *entitled to exercise the rights and remedies of a secured party under the Code ..."* (Emphasis added)

These provisions undeniably place NORTHWEST in a position of being a creditor of any non-Operator who fails to timely pay expenses.

Both the Participation Agreement and the Operating Agreements contain further provisions denying the creating of a partnership. The parties recognized that their arrangement would be taxed as a partnership by the Internal Revenue Service. However, the Agreements contain a denial of a partnership relationship *for all other purposes* as follows:

"It is not the purpose nor intention of our agreements to create and *they shall not be construed as creating a joint venture, mining partnership or other relation* whereby any parties shall be liable for the acts, either of omission or commission of other parties hereto, provided, however, the parties recognize that they will be taxed as a partnership for federal income tax purposes. The liability of the parties shall be several, not joint or collective ...

It is agreed that the provisions of this (present section) shall be limited in their application to matters relating to income taxes, and shall not in any way change, amend or affect other substantive rights and obligations of the parties ..." (Emphasis added)

3. Toward the end of November and the beginning of December, 1982, NORTHWEST made numerous assignments of its leasehold interests in the Robertson, Simmons and Bell wells to BUFFALO. All of the assignments were expressly made in furtherance of and subject to the parties' Participation Agreements. BUFFALO subsequently made partial assignments of these interests to BUFFALO 1981–I and Ivory & Sime Oil and Gas, Inc. Additionally, BUFFALO mortgaged its interests in Robertson No. 1–7, T10–R23, Sec. 7; Simmons No. 1–5A, T10–R23, Sec. 5; and Bell No. 1–6A, T10–R23, Sec. 6 to the First National Bank of Amarillo. The remaining movant, Hancock Trust, was an investor in the Doxey wells and had entered into an Operating Agreement with NORTHWEST. NORTHWEST was forced into bankruptcy by its creditors' filing of an involuntary Petition on December 3, 1982. The Order For Relief was granted following NORTHWEST'S confession of the Petition and ultimately resulted in this Chapter 11 proceeding.

4. On May 20, 1983, this Court entered an Order requiring the filing of Proofs of Claims and Interests, which had the dual purpose of confirming a claim and confirming the operating obligations of NORTHWEST. The Proof of Interest form sent out by NORTHWEST is captioned "Confirmation of Interests in Oil & Gas Leases and Unpaid Joint Interest Billings." The form requires non-operators to verify the Working Interest owned before and after payout in the five Doxey wells. The party is further required to confirm the "joint interest *accounts receivable* attributable to your Working Interest." Such form serves to establish NORTHWEST'S classification of the joint interest billings as accounts receivable. The accounts receivable classification meshes with the debtor/creditor

concept established in the earlier Participation and Operating Agreements.

5. NORTHWEST submitted a Second Amended Disclosure Statement, which was ultimately approved on January 31, 1984. Incorporated therein and labeled "Annex C" was a report compiled by the accounting firm of Price Waterhouse on "Trial Balances of *Accounts Receivable* and Payable of Northwest Exploration Company For the Creditors Committee" dated February 16, 1983. (Emphasis added) The report included as *accounts receivable* the amounts due from the movants, and numerous others, in relation to the Doxey prospect wells.

6. On March 19, 1984, this Bankruptcy Court entered an Order confirming NORTHWEST'S Second Amended and Restated Plan of Reorganization. The Plan established classes of "claimants" and Class Five was specifically structured to include persons holding "Interests or Assignments of Interests" in oil and gas wells in the Doxey Prospect but who have failed to submit their joint interest billings under paragraph 5.04 of the Plan.

The Plan defines "Interest" very broadly as:

> *"Interest"* shall mean an interest in production of oil and/or gas from a well in which the Debtor has an interest, and shall include, but not be limited to, *working interests, carried working interests, overriding royalty interests, other mineral interests and production payments; ..."* (Emphasis added)

BUFFALO and HANCOCK, by virtue of the Participation and Operating Agreements and the resulting assignments of leasehold interests from NORTHWEST, are both holders of "interests" for purposes of the Plan. The Plan treats the "interest" holders differently from the parties who hold assignments of such "interests."

The "interests" are treated under paragraph 5.04(a) of the Plan as follows:

> "To the extent that any person who holds an Allowed Interest in a Doxey well does not, in conjunction with and at the time of closing of the Proposed Sale, *pay its joint interest billings in respect to such properties and all other indebtedness owed to the debtor,* any interest of such person in such properties shall be *abandoned,* and such person shall thenceforth have no claim to any legal or equitable interest in such properties, and shall be treated as a Class 5 claimant. Upon the later of the confirmation of the Plan or the closing of the Proposed Sale, each such Class 5 claimant will be treated as having a Class 8 claim in an amount equal to the Value of his fractional working interest in the Abandoned well or wells ..." (Emphasis added)

This Plan provision is a method of collecting amounts owed to NORTHWEST under the Operating Agreements by presenting BUFFALO and HANCOCK with the option of either making their payments or forfeiting their "interests." This modifies the pre-Petition contract between NORTHWEST and parties which are non-creditors.

The parties receiving assignments or mortgages of the working interests in the Doxey well are treated differently under paragraph 5.04(b) of the Plan even though they have the same rights and obligations as the "interest" holders. Such class includes BUFFALO 1981–I, Ivory & Sime Oil and Gas, Inc. and FIRST NATIONAL BANK OF AMARILLO. Paragraph 5.04(b) states:

> "Any person who holds an assignment to an Interest in a Doxey well *who does not pay all of its indebtedness to the Debtor* at the time of the closing of the Proposed Sale shall hold such Interest subject to all legal and equitable rights and remedies of the Debtor and the creditors of the estate, and confirmation of this Plan shall constitute an operator's lien perfected against any Interest to which the person has an assignment, valid against and binding upon all parties in interest; such operator's lien may be recorded and foreclosed pursuant to 42 Okla.Stat. § 144, et seq. The Plan Trustee shall have the power to foreclose such lien upon any Interest held *by persons* who hold assignments to an Interest in a Doxey well and *who do not pay all of their*

*indebtedness to the Debtor* at the time of the Proposed Sale. Such persons who abandon their Interest in a Doxey well by foreclosure in this manner shall be treated as Class 5 claimants." (Emphasis added)

This provision is a correct statement of NORTHWEST'S rights of foreclosure pursuant to state law and the Operating Agreements. However, the paragraph purports to use the Plan to modify the pre-Petition contracts to establish a due date for purposes of default. There is no justifiable explanation given in the Plan for treating the classes, which are essentially similar, differently in paragraphs 5.04(a) and (b).

The Plan was ultimately confirmed by an Order of this Bankruptcy Court on March 19, 1984. As mentioned, all "interest" owners were required to pay up on their joint interest billings by the closing date for the Proposed Sale or forfeit their "interests." The closing date was set for September 6, 1984. The Proposed Sale was to be of NORTHWEST'S interest in four of the five Doxey wells to Dernick Resources, Inc. and Indrex, Inc. The "interests" which would be abandoned under paragraph 5.04 of the Plan would necessarily be included in such sale as a part of NORTHWEST'S "interest."

In an effort to foreclose the Class 5 claimants' interests, the Plan Trustee instituted an action in Beckham County State Court to enforce such rights. The action is still pending. Additionally, the present Complaint to Compel Turnover of Property and For Declaratory Judgment was filed as an Adversary proceeding with this Court on July 11, 1986 in an effort to enforce the Plan provisions. The bottom line effect of these provisions is that the parties owing joint interest billings were required to pay up by the Proposed Sale closing date or forfeit their interests to NORTHWEST. NORTHWEST would then be able to include such forfeited interests in the Proposed Sale.

## CONCLUSIONS OF LAW

▆ A. The present Motions to Dismiss contest the subject matter jurisdiction of this Court. Essentially their arguments are that NORTHWEST'S Second Amended Plan improperly includes and binds the movants' property rights in the Doxey Prospect and, since this adversary proceeding is brought to enforce the Plan provisions, this Court lacks subject matter jurisdiction. A Chapter 11 reorganization permits a bankruptcy debtor to restructure the contractual relationships with his *creditors*. The parameters of a Chapter 11 Plan are established by 11 U.S.C. § 1141(a) providing that a Plan is effective only against:

> "the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor ..."

A Plan modifying the contractual relationship of any additional parties is fatally flawed for purposes of confirmation. 11 U.S.C. § 1129(a)(1), (2) and (3).

▆ The jurisdiction of a U.S. Bankruptcy Court was examined in the landmark opinion *Northern Pipeline Construction Co. v. Marathon Pipeline Company,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed. 598 (1982). The *Marathon* opinion's relevancy to the present proceeding is in its recognition of "state-created private rights" which fall outside of a U.S. Bankruptcy Court's jurisdiction. Simply stated, a Bankruptcy Court has the authority to modify the contractual relationships of the bankruptcy debtor and his *creditors*. However, a bankruptcy debtor may not use the Bankruptcy Court to modify contractual relationships with *his debtor* or other parties not included within 11 U.S.C. § 1141.

A classic example of an action outside of a Bankruptcy Court's jurisdiction is a bankruptcy debtor bringing an action to collect or accelerate an accounts receivable either pursuant to a Chapter 11 Plan or through an adversary proceeding in bankruptcy. The Court in the case of *In Re Satelco, Inc.,* 58 B.R. 781 (Bankr.N.D.Texas 1986) has eloquently stated that actions to collect accounts receivable are founded and decided upon state law and are outside of a Bankruptcy Court's jurisdiction.

B. The pre-Petition contractual relationship between the Operator (NORTHWEST) and the non-operators is undeniably one of a *creditor* (NORTHWEST) and *debtor* (the non-operators). The Operating Agreements designated NORTHWEST as the Operator of the Doxey Prospect which carries the burden of drilling, developing and operating the wells. The non-operators' *only* obligation is to reimburse the Operator for their proportionate expenses resulting from the drilling and operation of the wells. The Operating Agreements protect the Operator by creating a perfected security interest in the Doxey wells in favor of the Operator for expenses incurred.

The partnership theory advanced by the NORTHWEST Trustee is unsupportable based upon the parties' pre-Petition contractual relationship. The existing authority creating a partnership in an Operating Agreement scenario has limited application. See *Dresser Industries, Inc. v. Crystal Exploration & Production Co.*, No. 84–1160 (10th Cir.1986). The present pre-Petition Agreements establish the parties' method of financing the drilling of the wells. No additional evidence of joint drilling activities has been presented. Also, the existence of a partnership, where the parties have specifically contracted to the contrary, is a State law question and was not adjudicated by the present parties pre-Plan confirmation.

C. BUFFALO is a debtor of NORTHWEST regardless of the result in the pending adversary, *Northwest Exploration Company v. Buffalo Corporation, et al.*, Adversary No. 84–0104. The action was filed on March 27, 1984, just eight (8) days after this Court's Order Confirming Plan, and pursuant to the lien avoidance provisions of 11 U.S.C. §§ 547 and 549. The NORTHWEST Trustee seeks to avoid the assignments of Working Interests made from NORTHWEST to BUFFALO. The assignments were made pursuant to, although over one year after, the Participation and Operating Agreements and just prior to the involuntary Bankruptcy Petition's filing.

We cannot give credence to NORTHWEST'S allegations regarding BUFFALO'S status. It would be inherently inequitable to label BUFFALO as a creditor of NORTHWEST for purposes of confirming the Plan. NORTHWEST was dilatory in making the Working Interest assignments and the Adversary was commenced one year and four months after the Petition's filing. Facially it appears that the Trustee is within the time frames set out in 11 U.S.C. § 108. However, for our jurisdictional purposes, we cannot label BUFFALO as a creditor of NORTHWEST based solely on the Trustee's pending Adversary action. BUFFALO shall be treated according to the pre-Petition contractual relationship of the parties as a debtor (accounts receivable) of NORTHWEST.

■ D. The "interest" holders, assignees and mortgagees are all non-operators possessing the same rights and obligations with respect to NORTHWEST but they are treated differently under the Plan. See Plan paragraphs 5.04(a) and (b). Both paragraphs require the non-operators to pay all indebtedness owed to NORTHWEST by the closing of the Proposed Sale. Such treatment is an incorrect modification of the contractual relationships since the non-operators are *debtors* of NORTHWEST and the parties' rights of collection and default are governed by their previous Agreements.

■ However, after default, NORTHWEST treats the non-operators differently in seeking relief. The inconsistent treatment of non-operators is unexplainable. An "interest" holder's failure to pay results in forfeiture [5.04(a)]. Conversely, an assignee or mortgagee's failure to pay will result only in a declaration of default with corresponding reversion to NORTHWEST'S appropriate State law remedies. See Plan paragraph 5.04(b) and 42 Okla. Stat. § 144, et seq. Therefore, the Plan is fatally flawed on three grounds: 1) It purports to modify the default and collection provisions of a pre-Petition contractual relationship between NORTHWEST and its *debtors;* 2) The "interest" holders must forfeit their property rights if they fail to

pay their indebtedness according to NORTHWEST'S revised terms; and 3) NORTHWEST'S remedies, once Plan default is declared, are different as to the similarly situated non-operators.

E. All of the non-operators, whether they are "interest" holders or assignees thereof, are debtors of NORTHWEST since they are obligated to reimburse NORTHWEST for its incurred operating expenses. NORTHWEST cannot use this Court to collect its accounts receivable. A Bankruptcy Court may modify the contractual relationship of a bankruptcy debtor and his *creditor* to provide the debtor with a "fresh start." The jurisdictional parameters established by the decisions in *Marathon, Satelco,* and the provisions found in 28 U.S.C. § 157 and 11 U.S.C. § 1141(a), undeniably prohibit a bankruptcy debtor from using the Bankruptcy Courts to modify pre-Petition contractual relationships with his *debtors.* A bankruptcy debtor's action to collect accounts receivable, or similar enforcement of contractual provisions with his *debtors,* is appropriately founded in State law and the State Courts.

Based upon these findings, the NORTHWEST Trustee's only remaining avenue for relief is a turnover order on the joint interest billings as accounts receivable. An entity owing a debt to the bankruptcy estate must pay the Trustee only if the debt is "matured, payable on demand, or payable on order ..." 11 U.S.C. § 542(b). The instant joint interest billings do not fit within this framework since they are potential debts only, at least until the collection provisions of the Participation and Operating Agreements are enforced. Since § 542(b) may not be used to collect the joint interest billings, it follows that the Trustee's access to § 542(b) for turnover of the "interests" is also extinguished.

THEREFORE, IT IS THE ORDER OF THIS COURT, for reasons set forth above, that all Motions to Dismiss be sustained—this proceeding is dismissed.