**MET–AL, INC., Plaintiff,**

v.

**HANSEN STORAGE COMPANY, Distribution Express, Inc., and Metal Brokers International, Inc., Defendants.**

No. 93–C–479.
Adv. No. 92–2304.

United States District Court,
E.D. Wisconsin.

June 22, 1993.

Donald H. Carlson, Riordan, Crivello, Carlson, Mentkowski & Steeves, Milwaukee, WI, for plaintiff.

Robert K. Steuer, Davis & Kuelthau, Milwaukee, WI, for Met–Al Creditors Committee.

John F. Horvath, Horvath & Lieber, Chicago, IL, Ronald L. Piette, Piette & Jacobson, Milwaukee, WI, for Hansen Storage.

Jeffrey J. Liotta, Hinshaw & Culbertson, Milwaukee, WI, for Distribution Exp.

Mark L. Metz, Reinhart, Boerner, Van Deuren, Norris & Rieselbach, Milwaukee, WI, trustee, for Metal Brokers Intern.

### *ORDER*

WARREN, Senior District Judge.

Before the Court is the defendants' motion for mandatory withdrawal of reference and their demand for a jury trial.

### I. *BACKGROUND*

The plaintiff in the above-captioned matter, Met–Al, Inc. ("Met–Al"), is a Wisconsin corporation which sells aluminum ingots produced from scrap aluminum. For approximately one year, beginning in October, 1991, Met–Al contracted to sell millions of dollars worth of aluminum ingots with people purporting to be representatives of the Emerson Electric Company and General Electric. In reality, the aluminum was received by Metal Brokers International, Inc. ("MBI"). MBI did not pay for much of the metal it received, and eventually, Met–Al discovered the subterfuge. On August 17, 1992, Met–Al filed for protection under Chapter 11 of the Bankruptcy Code. On the same day, it moved to enjoin defendant Hansen Storage Company ("Hansen") from releasing aluminum ingots stored in its warehouse to MBI, which was allegedly the owner of those ingots.

The bankruptcy court granted the injunction, and many of Met–Al's creditors have subsequently asserted claims against the aluminum.

On October 20, 1992, MBI's creditors filed a petition for involuntary bankruptcy against MBI, and the bankruptcy court entered its order for relief on November 13, 1992.[1] In the meantime, Met–Al had filed an amended complaint against Hansen and defendant Distribution Express, Inc. ("DEI")[2] for the conversion of 201 truckloads of aluminum ingots. Specifically, the complaint alleged that Met–Al's ingots were shipped under bills of lading naming Emerson Electric or General Electric as cosignee. However, the complaint continued, the aluminum was diverted to MBI through the unauthorized actions of Hansen and DEI.

Hansen and DEI answered the amended complaint and raised affirmative defenses. The bankruptcy court conducted hearings on the complaint and on March 3, 1993, and set the matter for trial on June 24, 1993. At approximately the same time, Met–Al moved for summary judgment pursuant to the Federal Bill of Lading Act ("FBLA"). Hansen and DEI both responded, but neither defendant raised any issues relevant to the bankruptcy court's jurisdiction. On April 29, 1993, Met–Al filed a second amended complaint which stated the same facts alleged in the earlier complaints, but pleaded its cause of action under the FBLA with respect to its lawsuit against DEI. The claim against Hansen was still based upon common law and Wisconsin's Uniform Commercial Code. This complaint was served on opposing counsel on or about May 6, 1993.

On May 11, 1993, DEI and the trustee for MBI filed the instant motion in district court. Hansen joined in this motion on May 14, 1993. The defendants argue that Met–Al's claim against DEI is governed exclusively by the FBLA and that the claims against Hansen arise under the Wisconsin Uniform Commercial Code and common law theories of negligence and conversion. Because these are all claims that are independent of bankruptcy law, the defendants submit that district court, not bankruptcy court, is the proper forum in which to resolve these disputes. In addition, the defendants have requested a jury trial, to which they claim they are entitled under the Seventh Amendment of the United States Constitution.[3]

## II. *LEGAL FRAMEWORK*

In 1982, the Supreme Court recognized that Congress had erroneously assigned certain non-delegable judicial functions of Article III courts to Article I bankruptcy courts. *Northern Pipeline Construction Corp. v. Marathon Pipeline Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). To correct the unconstitutionality of the current law, Congress amended the Bankruptcy Act in 1984 and provided district courts with original jurisdiction over all bankruptcy matters. *See* 28 U.S.C. § 1334(b). Once a bankruptcy proceeding is filed, the district court will automatically refer it to the bankruptcy court pursuant to 28 U.S.C. § 157(a). However, the court is permitted by 28 U.S.C. § 157(d) to withdraw its reference to bankruptcy court if the matter involves law that should or must be adjudicated by an Article III judge.

Section 157(d) provides that:

[t]he district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court deter-

---

1. MBI appears as a defendant in this action through its trustee, John Scaffidi.

2. DEI is the common carrier used by Met–Al to transport ingots to buyers.

3. The trustee for MBI filed its motion for mandatory withdrawal of reference along with DEI.

However, there is little mention anywhere of MBI's role in this adversary proceeding. The Court is unable to ascertain the nature of Met–Al's claim against MBI and cannot evaluate arguments that have not been made. It must therefore summarily deny the trustee's motions.

mines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

In other words, a district court is permitted to withdraw its reference "for cause shown," but *must* withdraw its reference if it will have to consider both bankruptcy law and other federal law in order to resolve a proceeding.

In deciphering the somewhat ambiguous provisions of the "mandatory withdrawal" section of § 157(d), many courts have found the legislative history instructive. *See e.g., In re Contemporary Lithographers, Inc.*, 127 B.R. 122 (M.D.N.C.1991); *In re American Solar King Corp.*, 92 B.R. 207 (W.D.Tex.1988); *In re Baker*, 86 B.R. 234 (D.Colo.1988). Several Senators indicated that the provision concerning mandatory withdrawal should be construed very narrowly, and the district courts should exercise their powers "only if [they] determine[ ] that ... other laws regulating organizations or activities affecting interstate commerce are in fact likely to be considered." 130 Cong.Rec. § 6081 (daily ed. June 19, 1984). Section 157(d) was not intended to provide an "escape hatch" which parties would use to remove cases to district court; rather, it was intended only to apply to cases related to bankruptcy which involved application of federal laws such as the National Labor Relations Act, civil rights laws, and the Securities and Exchange Act of 1934. *Id.* at 1849–50 (daily ed. March 21, 1984). However, where the non-title 11 laws were not material to the resolution of the proceedings, the bankruptcy court was meant to retain its jurisdiction. *Id.* at 6081 (daily ed. June 19, 1984).

 Although most courts have read the legislative intent into § 157(d)'s application, *see e.g., In re White Motor Car Corp.*, 42 B.R. 693 (N.D.Ohio 1984), others choose to interpret it literally, which results in a withdrawal of reference every time a federal non-bankruptcy issue is implicated. *In re Anthony Tammaro, Inc.*, 56 B.R. 999 (D.N.J.1986). This Court believes that a

narrower interpretation is in accord with the section's intended purpose, and it will withdraw its reference only if the resolution of the claims will require "substantial and material consideration of non-bankruptcy code statutes," *In re White Motor Car Corp.* at 705, or "significant interpretation of non-Title 11 federal issues." *In re Gibson & Cushman Dredging Corp.*, 100 B.R. 634, 639 (E.D.N.Y.1989).

 All motions for withdrawal of reference, even those brought pursuant to the mandatory language of § 157(d), have a threshold requirement of timeliness. *In re Stavriotis*, 111 B.R. 154, 157 (N.D.Ill.1990). Although there is no definition of "timely" with respect to § 157(d), several courts have held that the motion should be made "as soon as possible after the moving party has notice of the grounds for withdrawing the reference," *Matter of Lissner Corp.*, 115 B.R. 604, 608 (N.D.Ill.1990), quoting *In re IQ Telecommunications, Inc.*, 70 B.R. 742, 746 (N.D.Ill.1987), or at "the first reasonable opportunity." *In re Baldwin–United Corp.*, 57 B.R. 751, 753 (S.D.Ohio 1985). The court's evaluation should be based upon the particular facts of the case, such as whether the moving party has a legitimate interest in the withdrawal or is merely employing "stalling tactics" designed to prejudice the non-moving party. *Lissner*, 115 B.R. at 608; *Stavriotis*, 111 B.R. at 157.

### III. *DISCUSSION*

Met–Al has objected to the defendants' motions on several grounds. First and foremost, it claims that the motion for withdrawal of reference is not timely. A trial date had been set and motions for summary judgment had been filed in bankruptcy court before the defendants filed the instant motions. Met–Al's chances of a successful emergence from Chapter 11 depend upon speedy resolution of its adversary proceedings, and the bankruptcy court is better equipped to try matters expeditiously than this Court. Even when the withdrawal sought is mandatory, the timeliness requirement of § 157(d) cannot be avoided. Although the amended complaint

did not specifically implicate the FBLA by name, the facts giving rise to Met–Al's cause of action did not change when it filed its second amended complaint. The defendants were on notice of the nature of the claims against them, yet waited until six weeks before trial to bring this motion.[4] Furthermore, the law governing Met–Al's claims is not complex or novel, which raises the presumption that the bankruptcy court is capable of resolving this matter itself. Finally, Met–Al asserts that Hansen's motion to withdraw should be denied, as the claims against it are state law claims, not federal claims as specified by § 157(d).

The defendants respond that it was not until the second amended complaint was filed that Met–Al included a jurisdictional basis for the complaint. Therefore, they did not realize that Met–Al would rely solely on the FBLA for relief until May 6. Since the motion for withdrawal of reference was filed on May 11, five days later, it is undeniably timely. Met–Al's failure to file its complaint under the FBLA initially should foreclose it from raising concerns of timeliness, as the defendants were not able to ascertain the specific nature of the claim until the jurisdictional basis for the adversary proceeding was established.

## IV. ANALYSIS

■ There is no question that the FBLA is one of the "other laws of the United States" contemplated in 28 U.S.C. § 157(d). Met–Al's cause of action rises directly and exclusively from a federal statutory scheme and does not implicate any bankruptcy considerations whatsoever. In addition, the activities regulated by the FBLA, by their nature, have a significant impact on interstate commerce. *See In re White Motor Corp.*, 42 B.R. at 705. Met–Al's claim that resolution of the proceeding will involve a rote application of federal law is not convincing. While there might be some application of established principles, issues which are not directly addressed under the FBLA or the case law

stemming therefrom are likely to arise. This claim is wholly a creature of a federal statute and does not implicate Title 11 in the least. The issue then becomes whether DEI's motion is timely under § 157(d). Hansen's position is slightly different, as the claims against it arise from non-federal, non–Title 11 law. It too must pass the timeliness threshold first, however, before the Court determines whether it must or may withdraw its reference.

### A. TIMELINESS OF THE DEFENDANTS' MOTIONS

■ In its motion, DEI has relied largely upon the reasoning in *Matter of Lissner*, 115 B.R. 604 (N.D.Ill.1990), in which the district court rejected a trustee's claim that a creditor's motion for withdrawal of reference was untimely. Although the trustee had mentioned that he intended to defend the estate against the creditor's proof of claim by invoking a provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), he never filed a formal motion naming that provision until March 19, 1990, with the memorandum of law following on March 28, 1990. Similarly, although the creditor had mentioned his concerns about the bankruptcy court's jurisdiction over a proceeding which was largely governed by non–Title 11 federal law, he did not file his motion for withdrawal of reference until May 7, 1990, seven weeks after the trustee's motion was filed.

The district court found that the withdrawal motion was timely, even though the creditor had been placed on notice of the ERISA defense nearly five months prior to the filing of the withdrawal motion. Initially, it noted that the creditor would not have been able to file its motion for withdrawal in good faith without having evaluated the arguments in the trustee's motion which named the ERISA provision. Although the seven week period between the trustee's motion and the creditor's motion for withdrawal "[gave] the court some

---

**4.** The plaintiff's motion for summary judgment, filed on March 24, 1993, indicated that Met–Al was relying on the FBLA in pursuing its claim.

pause, on balance it conclude[d] that [the creditor] acted with reasonable dispatch." *Lissner, supra* at 610. It was preferable, the court reasoned, that the creditor file a meritorious § 157(d) motion after carefully weighing the trustee's arguments than it would be for parties to be forced into filing expedited motions without having engaged in any analysis beforehand. *Id.* at 611.

In the instant case, the FBLA was not mentioned until the beginning of March, and Met–Al did not file its second amended complaint until May 6, 1993. Therefore, depending upon which party's perspective governs, there was a delay of either ten weeks or six days between the time DEI had notice of Met–Al's FBLA claim and the time that DEI filed its motion for withdrawal of reference. Under the district court's reasoning in *Lissner*, the six day time frame should govern, because it would have been premature for the defendants to file their motion before Met–Al's complaint had been amended to state its claim under the FBLA. However, Met–Al claims that amending the complaint merely restated what had been obvious since the summary judgment motion was filed—that it was seeking relief under the FBLA—and that the ten week delay between the motion for summary judgment and the motion for withdrawal of reference was not timely under § 157(d).

■ This Court finds *Lissner* and the defendants' arguments persuasive with respect to the timeliness of the motion for withdrawal of reference. Although the substance of the complaint might have remained the same throughout the entire bankruptcy proceeding, Met–Al never pleaded a cause of action under the FBLA until May 6. Mandatory withdrawal of reference demands consideration of a federal statute. There was no federal statute even implicated by name in this matter until Met–Al filed its motion for summary judgment on March 3. While DEI could have moved for mandatory withdrawal at this time, the amended complaint did not clearly

state a federal cause of action, and Met–Al could have used this fact as a defense to any withdrawal motion filed prior to the second amended complaint. Any delay in the motion for mandatory withdrawal of reference is in large part attributable to Met–Al's failure to allege its cause of action under the appropriate federal statute in a timely manner. The defendants, in contrast to Met–Al's portrayal, acted remarkably expeditiously under the circumstances, given the five-day time gap between the amending of the complaint and the filing of the withdrawal motion. Therefore, the Court finds that the defendants have met the threshold requirement of timeliness under § 157(d) and should not be precluded from seeking mandatory withdrawal of reference.

## B. JURY TRIALS IN ADVERSARY PROCEEDINGS

■ A litigant in an adversary proceeding, like any other party in federal court, may waive his or her right to a jury trial by failing to file a timely demand under Federal Rule of Civil Procedure 38.[5] Bankruptcy case law has developed to permit another meaning of "waiver" with respect to jury trials, however; a litigant may also waive his or her Seventh Amendment right to a jury by consenting, explicitly or tacitly, to the bankruptcy court's jurisdiction over the claim. *Matter of Hallahan*, 936 F.2d 1496 (7th Cir.1991). In *Hallahan*, the debtor chose to proceed with his action under the protection of the Bankruptcy Code and had thereby forfeited his right to a jury. *Id.* at 1506. Creditors choosing to file claims in bankruptcy court, rather than waiting for the trustee to bring a plenary action in federal court, are similarly held to have waived their right to a jury trial. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), citing *Schoenthal v. Irving Trust Co.*, 287 U.S. 92, 53 S.Ct. 50, 77 L.Ed. 185 (1932). "The important factor in considering waiver is ... whether the party

---

**5.** This rule provides that a party must make a demand for a jury trial "at any time after the commencement of the action and not later than ten days after the service of the last pleading directed to such issue." Fed.R.Civ.P. 38(b).

seeking a jury trial voluntarily brought the action in bankruptcy or was involuntarily joined as a party by another participant in the bankruptcy proceeding." *Mid American Concrete Constr., Inc. v. Sears Roebuck & Co.*, 91–C–6286 (May 6, 1993, N.D.Ill.) (1993 WL 177140).

The Court is able to state summarily that neither Hansen nor DEI waived their right to a jury trial by submitting to the bankruptcy court's jurisdiction. Neither is a creditor of Met–Al, and Met–Al initiated this action against the two defendants in bankruptcy court. They are proceeding before the bankruptcy court by happenstance and had absolutely nothing to do with choosing the forum in which these claims have been pending thus far. The question as to whether they waived their right to a jury trial under Rule 38 is more problematic.

Because the right to a jury trial is protected by the United States Constitution, the court should exercise its discretion with an aim to protecting this right; there is a strong presumption against any waiver. *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 510, 79 S.Ct. 948, 956, 3 L.Ed.2d 988 (1959). Nevertheless, the fact that the right to trial by jury arises under the Constitution is not sufficient, in and of itself, to override a Rule 38(d) waiver. 9 Wright & Miller, *Federal Practice and Procedure*, § 2321 (1971). Even though the motion for a jury trial was filed only five days after Met–Al filed its second amended complaint, the non-core [6] nature of the original complaint never changed in spite of the subsequent amendments. This means that the defendants could have made a jury demand immediately after the original complaint was filed notwithstanding the fact that the complaint was amended twice since them. Therefore, the Court finds that the defendants waived their right to a jury trial under Rule 38(b).

Nevertheless, this Court does have the discretion to grant the defendants' motion for a jury trial under Federal Rule of Civil Procedure 39, which provides that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." Fed.R.Civ.P. 39(b). Rule 39(b) motions are liberally granted when no prejudice results to the non-moving party. *In re Suburban Motor Freight, Inc.*, 114 B.R. 943, 954 (Bkrtcy.S.D.Ohio 1990). Additional factors to be evaluated include the moving party's reasons for not making a timely demand, the types of issues to be tried, the disruption a jury trial would cause to the schedules of the court and the adverse party, and the length of delay in moving for a jury trial. *Id.*, citing *Parrott v. Wilson*, 707 F.2d 1262 (11th Cir.), *cert. denied*, 464 U.S. 936, 104 S.Ct. 344, 78 L.Ed.2d 311 (1983); *see also In re Hallmark Elec. Contractors, Inc.*, 116 B.R. 67, 69–70 (Bkrtcy. W.D.Tex.1990).

Although both defendants have argued that no prejudice will accrue to Met–Al by virtue of a jury trial instead of a bench trial, the Court finds these arguments disingenuous. Met–Al is reorganizing under Chapter 11, and speedy resolution of these claims is crucial to the successful confirmation of its plan. A jury trial is more difficult to schedule than a court trial and is usually accompanied by motions *in limine*, sidebar conferences, and jury instruction conferences, which prolong the proceeding. There is nothing in the briefs submitted by the defendants which convinces the Court that it should exercise its discretion and grant their motion.

First, neither defendant has offered an acceptable excuse as to why an earlier request was not filed. As mentioned earlier, the plaintiff's claims throughout this case have been of a non-core nature, yet the record is devoid of any prior jury de-

---

6. A core proceeding is generally defined as a proceeding "which would not exist in law absent the Bankruptcy Code." *Helmer v. Murray* (*In re Murray*), 149 B.R. 383, 386 (E.D.Va.1993). A non-comprehensive list of the types of pro-

ceedings that are "core" can be found in 28 U.S.C. § 157(b)(2): Non-core proceedings are, obviously, those adversary proceedings that are not core proceedings.

mands.[7] The length of the delay is significant; it was nearly nine months after the original complaint for the adversary proceeding was filed that the defendants first raised this issue. Two other courts have held that shorter delays did not warrant relief under Rule 39(b). *In re Hallmark Elec., supra* (delay of five months); *In re Suburban Motor Freight, supra* (delay of six months). The Court can minimize the prejudice resulting from delay to Met–Al by resolving this matter expeditiously at a bench trial. Finally, the issues which will be presented at trial are law-intensive and arcane. Although juries should not be precluded from presiding over an exceptionally complex or technical case on this basis alone, it is certainly a consideration in the balancing of factors in which the Court is engaging today.

It is apparent that the defendants did not make a timely demand for a jury trial and thereby waived their right to it under Rule 38. The Court shall not grant their motions for a jury trial pursuant to Rule 39, as the balance of the equities is not in favor of their position.

### C. HANSEN'S MOTION FOR MANDATORY WITHDRAWAL OF REFERENCE

In its brief opposing the defendants' motion for withdrawal of reference, Met–Al pointed out that Hansen's claims, standing apart from those of DEI, were based upon state statutes and common law and thus were not brought under "the laws of the United States," as § 157(d) requires. It then suggested, without citing to any type of legal authority, that Hansen's withdrawal motion be summarily denied. Hansen, just as blithely, has responded that not one Title 11 issue is implicated in its adversary proceeding and that the federal concept of interstate commerce plays an integral role in this action. Again, it failed to set forth any type of legal authority indicating whether a district court may withdraw its reference pursuant to 28 U.S.C. § 157(d) when resolution of the claim hinges upon state, not federal, laws.

The Court's own research reveals an unsettled state of affairs, as is often the case among the bankruptcy courts in the various districts. Section 157(d) explicitly requires "consideration of both title 11 and *other laws of the United States regulating organizations or activities affecting interstate commerce*" as a basis for mandatory withdrawal of reference. 28 U.S.C. § 157(d) (emphasis added).[8] Some courts have interpreted this language narrowly, concluding that mandatory withdrawal is only triggered by a federal statute and that state claims must be resolved by the bankruptcy court. *See In re Lion Capital Group,* 63 B.R. 199, 210 (S.D.N.Y.1985); *Macon Prestressed Concrete Co. v. Duke,* 46 B.R. 727, 729–730 (D.D.C.1985); *see also In re Tastee Donuts, Inc.,* 137 B.R. 204, 205 (E.D.La.1992). Other courts have virtually ignored the fact that an adversary proceeding may implicate only state law and instead have focused on whether the proceeding is "core" or "non-core." *Matter of Delaware & Hudson Ry. Co.,* 122 B.R. 887 (D.Del.1991). In these types of inquiries, the crux of the matter is whether the moving party is entitled to a jury trial.

---

7. The defendants, especially DEI, could argue that they could not make a jury demand until Met–Al pleaded its cause of action under the FBLA, as bankruptcy courts cannot preside over jury trials and there was no basis for a motion for withdrawal of reference. However, there is abundant authority indicating that permissive withdrawal of reference is proper when the cause of action alleged is non-core and the party seeks to assert his or her right to trial by jury. The defendants could have demanded a trial by jury on this basis, but did not.

8. The possibility exists that Hansen has misinterpreted the language of § 157(d). The Court reads the statute as authorizing a withdrawal of reference when there is consideration of federal laws regulating both organizations and activities affecting interstate commerce. Hansen could have taken the language of § 157(d) as providing a basis for mandatory withdrawal of reference if the proceeding necessitated consideration of any federal law or activities affecting interstate commerce, be they governed by federal or state law. The Court finds this latter construction to be attenuated and would have declined to have accepted it, had it been presented. The fact that a state court claim is analogous to a federal claim does not implicate the mandatory language of § 157(d). *See Kiep v. Turner,* 80 B.R. 521, 534 (D.Hawaii 1987).

"If [the moving party is] entitled to a jury trial, and the bankruptcy court does not have the authority to conduct the trial, there is sufficient cause to withdraw the reference." *Business Communications, Inc. v. Freeman*, 129 B.R. 165, 166 (N.D.Ill. 1991). This withdrawal is accomplished under the discretionary provisions of § 157(d). *Pied Piper Casuals v. Ins. Co. of the State of Pennsylvania*, 72 B.R. 156, 159 (S.D.N.Y.1987); *Macon Prestressed Concrete*, 46 B.R. at 730.

In light of § 157(d)'s plain language, which clearly states that withdrawal of reference is mandatory only when federal law is implicated, the Court finds that Hansen's motion cannot be granted under the mandatory provisions of § 157(d). Although the language of *In re White Motor Car Corp.*, *supra*, indicates that the district court's reference must be withdrawn when the proceeding entails "substantial and material consideration of non-bankruptcy code statutes," *id.* at 705, this Court believes that the statutes referred to in that phrase were federal ones. It has not located a single case in which a court withdrew its reference under the mandatory provisions of § 157(d) for an adversary proceeding based solely upon state law issues, except for proceedings in which the moving parties had made timely jury demands. Hansen, as discussed earlier, has waived its right to a jury and therefore cannot rely on the mandatory language of § 157(d) to support its motion for a withdrawal of reference.

However, a district court has the discretion to withdraw its reference for "cause shown." 28 U.S.C. § 157(d). Cause may be shown in a number of ways. The district court may withdraw its reference for reasons of judicial economy and the convenience of the parties. *In re Ramex International*, 91 B.R. 313, 315 (E.D.Pa. 1988). It may also consider the bankruptcy court's knowledge of the facts of the case, the interest of promoting uniform and efficient bankruptcy administration, and conservation of the parties' resources. *In re Sevko*, 143 B.R. 114, 117 (N.D.Ill.1992), citing *Hatzel & Buehler v. Central Hudson*

*Gas & Electric*, 106 B.R. 367, 371 (D.Del. 1989). Whether or not a proceeding is core is also a factor to be considered. *Acolyte Electric Corp. v. City of New York*, 69 B.R. 155, 165–66 (Bkrtcy.E.D.N.Y.1986); *cf. Eastern Electric Sales Co. v. General Electric Co.*, 94 B.R. 348, 349 (E.D.Pa.1989) (fact that proceeding is core is cause, by itself, for withdrawal).

A district court has the authority to withdraw its reference for cause shown *sua sponte*. 28 U.S.C. § 157(d). Even though none of the parties addressed the issue of discretionary withdrawal explicitly in their briefs, the Court finds that this is the type of case in which it would be proper. Withdrawal of reference with respect to DEI is mandatory and the Court is obliged to preside over this matter at trial. Met–Al's claims against Hansen are not identical to those against DEI, but both causes of action arise out of a common set of facts. Both claims were to be tried together in bankruptcy court; it would be a waste of judicial resources for two separate trials to be conducted in two separate courts. Met–Al's attorneys would be forced to prosecute their claims twice, thereby further depleting the debtor's estate. This is a non-core proceeding, and had Met–Al not filed for the protection of Chapter 11, the parties would be litigating in state court. The claims against both defendants apparently involve the same metal; by conducting one trial rather than two, the risk of inconsistent verdicts is minimized. The bankruptcy court would not have the statutory authority to enter final judgment in a non-core proceeding, since Hansen has refused to consent to such an arrangement, so the Court would be required to review *de novo* the bankruptcy court's proposed findings of fact and conclusions of law in order to render a binding judgment. 28 U.S.C. § 157(c)(1). The Court finds, after considering these factors, that a discretionary withdrawal of reference is proper with respect to the adversary proceeding against Hansen.

## V. CONCLUSION

The defendants did file the motions resolved today only six weeks prior to the

date set for trial in bankruptcy court, but at that time, there were also cross-motions for summary judgment pending before the bankruptcy court.[9] Without engaging in a discussion of the merits of those motions, it is entirely possible that the need for a trial would have been, and still can be, obviated by the entry of summary judgment for either Met–Al or the defendants. The quantum of prejudice which would accrue to Met–Al as a result of withdrawal of reference will therefore remain unknown pending this Court's ruling on the motions for summary judgment.

The Court recognizes that the fact that the defendants even filed their motions has inhibited the progress of this matter; had this case remained in bankruptcy court, the motions for summary judgment could have been resolved by now, and the parties might be preparing for trial. Instead, Met–Al, DEI and Hansen have spent the last month briefing this motion while the summary judgment motions are languishing in bankruptcy court. Unfortunately, the prejudice this delay might inflict upon Met–Al is unavoidable in light of the language of § 157(d), given the Court's finding that the defendants' motions were timely. The Court can only assure the parties that it will bear in mind the fact that this is an adversary proceeding and attempt to resolve all further issues in an expeditious and efficient manner as possible.

The Court hereby **ORDERS** that its automatic reference of the above-captioned matter to the bankruptcy court be **WITHDRAWN** with respect to defendants DEI and Hansen and that these matters be **TRANSFERRED** to this Court as a proceeding under Docket Number 93–C–479; MBI's motion for withdrawal of reference is **DENIED.** It is further **ORDERED** that the defendants' demands for a jury trial be **STRICKEN** based upon their lack of timeliness. The Court shall not require an additional hearing on the parties' motions for summary judgment unless, after reviewing the record, it would find such additional

argument helpful. A date for a pretrial/settlement conference, final pretrial conference, and court trial shall be set, if necessary, in the *Order* resolving the motions for summary judgment. In the meantime, the parties are advised to notify the Court as to the projected length of a court trial.

**SO ORDERED.**

---

**9.** The bankruptcy court is staying its judgment pending the Court's decision on the motion for withdrawal of reference.