**In re BALSAM CORPORATION, et al., Debtors.**

**OFFICIAL PLAN COMMITTEE, ASTF, Inc., CON Inc., and Balsam Corporation, Plaintiffs,**

**v.**

**STARSHAK & ASSOCIATES, INC., Southwest Recreational Industries, Inc. and Astroturf, Inc., Defendants.**

No. 4:95CV800–DJS.

United States District Court,
E.D. Missouri,
Eastern Division.

June 30, 1995.

Joel A. Kunin, Carr and Korein, East Saint Louis, IL, for Balsam Corp., ASTF, Inc. and CON, Inc.

David A. Warfield, Husch and Eppenberger, St. Louis, MO, for Official Plan Committee.

Michael B. Solow, Hopkins and Sutter, Chicago, IL, for Starshak & Associates, Inc.

Jeffrey S. Norwood, Miller and Martin, Chattanooga, TN, for Southwest Recreational Industries, Inc. and Astroturf, Inc.

James S. Cole, Jr., Asst. U.S. Trustee, U.S. Dept. of Justice, St. Louis, MO.

### ORDER

STOHR, District Judge.

This bankruptcy matter is before the Court on the motion of Southwest Recreational Industries, Inc. ("Southwest") to withdraw the reference of this matter to the United States Bankruptcy Court for the Eastern District of Missouri. The matter was originally referred to the bankruptcy court in accordance with 28 U.S.C. § 157 and Local Rule 29(B)(1). However, Southwest argues that a non-core proceeding between two non-debtors has arisen out of the original bankruptcy action and requires a jury trial. Therefore, Southwest seeks an order withdrawing the reference.

The scope of the underlying bankruptcy matter is quite broad and the facts relevant to this particular motion are somewhat involved. On November 22, 1994, the Bankruptcy Court entered an order approving the sale of debtor Balsam Corporation's assets to Southwest.[1] The sale agreement was brought to fruition in part through the efforts of Starshak & Associates, Inc. ("Starshak"), a consultant approved by the Bankruptcy Court for the purpose of, among other things, "assisting the Debtors in formulating and implementing a plan or plans of reorganization and assisting Debtors in managing their day to day business operations as Debtors in Possession...." Southwest Exh. C, p. 1 at ¶ 1.

In connection with its employment by debtor, Starshak required debtor to execute an "Engagement Letter Agreement" setting forth the terms and conditions of Starshak's employment. Of primary relevance to these proceedings is that portion of the Engagement Letter Agreement which requires debtor to indemnify Starshak from certain claims, other than gross negligence or willful misconduct, that might arise as a result of Starshak's services. Starshak became intimately involved in the day-to-day business activities of debtor, as well as with the negotiation and consummation of the sale of debtor's assets to Southwest (the "Sale Agreement").

Ernst & Young originally valued debtor's assets, as of August 31, 1994, at $19,100,-000.00. Pursuant to the Sale Agreement, Southwest agreed to pay $9,800,000.00 for those assets. However, in order to take into consideration a decline in the value of the assets occurring between August 31, 1994, when the assets were originally valued, and November 28, 1994, the date when the sale actually closed, the parties negotiated a "downward closing adjustment" of $6,300,-000.00 in the purchase price. Therefore, immediately prior to closing, Southwest was prepared to pay $3,500,000.00 for debtors'

---

1. There are actually three debtors: Balsam Corporation, ASTF, Inc., and CON, Inc. However, all three are related entities and shall be collectively referred to as either "Balsam Corporation" or "debtors" for purposes of this order.

assets. However, the agreement also provided that if the asset value was determined at the time of closing to be less than $12,000,-000.00, Southwest was entitled to a refund of the difference between $12,000,000.00 and the actual asset value. At closing Southwest received an additional downward adjustment of the purchase price, based on this provision, of $511,773.16. Therefore, at closing, Southwest paid $2,988,226.84 for debtors' assets.

The agreement also granted Southwest a 48–hour period, following the closing, within which to review the closing calculations. After a "limited review" of Starshak's calculation of the asset amount, Southwest determined that the asset value was at least an additional $1,367,543.00 below the benchmark of $12,000,000.00. The parties negotiated this difference, and the debtor ultimately agreed to refund another $750,000.00 of the purchase price. In exchange, Southwest agreed not to make further claims against debtor for adjustments to the purchase price.

Since the closing, Southwest alleges that it has discovered $630,478.35 in additional liabilities of the debtor, which were not contemplated in the purchase price. In addition, Southwest alleges that it discovered "irregularities" in connection with the receivables purchased from debtor in the amount of $389,196.64. Southwest acknowledges its agreement not to pursue the debtor to recover these costs. Nevertheless, Southwest allegedly "threatened Starshak with litigation over its role in the calculation of the Asset Amount." In response, Starshak filed an administrative proof of claim based on the indemnity provisions of the Starshak Engagement Letter.

Plaintiffs—The Official Plan Committee, Balsam Corporation, ASTF, Inc. and CON, Inc.—commenced this adversary proceeding with the filing of a Declaratory Judgment action. Plaintiffs seek a determination that Starshak bears no liability to Southwest with regard to certain claims related to the sale of debtor's assets. Further, plaintiffs seek a declaration that none of the debtors bear any liability to Starshak based on the indemnification provisions of the Engagement Letter Agreement.

In response to plaintiffs' complaint, Southwest filed a motion to dismiss, which was denied by the Bankruptcy Court on June 9, 1995. On June 20, 1995, Southwest filed its answer, demanding a jury trial and asserting a counterclaim against Starshak. The counterclaim contains five counts, all pertaining to Starshak's actions in relation to the asset calculations and the Sale Agreement.

■ In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the United States Supreme Court struck down Congress' efforts to significantly broaden the scope of jurisdiction conferred upon non-Article III bankruptcy courts. Subsequent to the *Marathon* decision, Congress enacted 28 U.S.C. § 157. Section 157 classifies matters as either "core proceedings," which the bankruptcy court may "hear and determine" and "enter appropriate orders and judgments," under § 157(b)(1), or "non-core proceedings," as to which, under § 157(c)(1), the bankruptcy court is only empowered to submit proposed findings of fact and conclusions of law to the district court for a de novo review. Alternatively, the parties can consent to the referral of a non-core proceeding to the bankruptcy court to "hear and determine and to enter appropriate orders and judgments." § 157(c)(2).

The fundamental question presented in this motion to withdraw the reference is whether this Court or the bankruptcy court should adjudicate plaintiffs' declaratory judgment action and Southwest's counterclaims. This Court's authority to withdraw the reference of a matter to the bankruptcy court stems from § 157(d).[2] Section 157(d) provides that:

> [t]he district court may withdraw in whole or in part, any case or proceeding referred [to the bankruptcy court] on its own motion or on a timely motion of any party, for cause shown. The district court shall, on

---

**2.** Section 157(b)(5) would require this Court to try Southwest's claims if they involved personal injury or wrongful death. However, since neither of those types of claims is at issue here, § 157(b)(5) is not germane to this inquiry.

timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce. If plaintiffs' claims require consideration of "both title 11 and other laws of the United States regulating ... interstate commerce," the second sentence of § 157(d) would mandate withdrawal. However, Southwest does not argue that withdrawal of the reference is mandatory. Therefore, the only remaining consideration is a discretionary withdrawal, as provided by the first sentence of § 157(d).

The first sentence of § 157(d) permits withdrawal of the reference upon a showing of "cause." However, the statute does not define "cause." In an effort to ascertain the existence of cause, district courts have considered several factors, including: (1) whether the claim is core or non-core; (2) whether the claim is legal or equitable; and (3) judicial economy, prevention of forum shopping, uniformity in the administration of bankruptcy law, and economical use of debtors' and creditors' resources. See, e.g., In re Century Brass Prods., Inc., No. 2-91-79, 1992 WL 22191 at *3 (D.Conn. Jan. 7, 1992); In re Mountain View Coach Line, Inc., No. 88 Civ. 5385, 1989 WL 129479, at *1 (S.D.N.Y. Oct. 24, 1989); In re Wedtech Corp., 94 B.R. 293, 296 (S.D.N.Y.1988).

■ First, with regard to the "core v. non-core" inquiry, § 157(b)(2) provides in relevant part that:

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

\*     \*     \*     \*     \*     \*

(O) other proceedings affecting the liquidation of the assets of the estate ...

28 U.S.C. § 157(b)(2). Numerous courts have considered these subtle yet critical characterizations. In In re Tranel, 940 F.2d 1168 (8th Cir.1991), the debtor sought leave to initiate an action for fraud against creditors for allegedly "intentionally and maliciously" manipulating the value of debtor's assets. The Eighth Circuit concluded that,

where the contemplated state court action "strikes at the heart of the [parties'] relationship," it is a core proceeding over which the bankruptcy court retains jurisdiction. Id. at 1175, citing Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183 (5th Cir.1990).

Similarly, the Second Circuit, consistent with other circuits, has endeavored to construe the scope of bankruptcy court jurisdiction conferred by § 157(b)(2) as broadly a possible within the constitutional constraints imposed by the Supreme Court in Marathon. In re Ben Cooper, Inc., 896 F.2d 1394, 1398–99 (2d Cir.1990); accord In re Arnold Print Works, Inc., 815 F.2d 165, 168–69 (1st Cir. 1987); In re Mankin, 823 F.2d 1296, 1301 (9th Cir.1987). In Cooper, the Second Circuit held that the bankruptcy court has jurisdiction pursuant to § 157(b)(2)(A) over contract claims under state law when the contract was entered into and the claim arose post-petition, meaning that the claim arose after the filing of the bankruptcy petition. Specifically, the Second Circuit stated that "the adjudication of such claims is an essential part of administering the estate." Cooper, 896 F.2d at 1400.

■ The dispute at issue here involves a post-petition contract. By the express language of the statute, the mere existence of state law claims does not preclude a finding that the adversary proceeding is core. See 28 U.S.C. § 157(b)(3) ("determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."). The Sale Agreement is the sole basis for the relationship between plaintiffs and Southwest. Further, this action clearly concerns the administration of the estate and the liquidation of the debtor's assets. Consequently, any challenge to the asset sale relates to that Sale Agreement and "strikes at the heart" of the parties' relationship. Therefore, pursuant to § 157(b)(2)(A), this adversary proceeding is deemed a "core" proceeding, consistent with the interpretation of that section by the Eighth Circuit in Tranel and the Second Circuit in Cooper. Cf. In re Century Brass Products, Inc., 1992 WL 22191, *2; In re Leco Enter., Inc., 125 B.R. 385, 389 (S.D.N.Y. 1991) (prompt resolution of dispute concern-

ing receivables is essential to administration of estate); *In re Franklin Computer Corp.*, 60 B.R. 795 (Bankr.E.D.Pa.1986) (collection of accounts receivable constitute core proceeding because it pertains to administration of estate).

The Court's finding that this dispute concerning the administration of the estate is a core proceeding is bolstered by the fact that, pursuant to the Engagement Letter Agreement, the debtor is obligated to defend and indemnify Starshak from certain liabilities. Starshak admits that certain assets of the debtors are being withheld from distribution in order to satisfy this potential obligation of the debtors. This fact supports both a finding that the administration of the estate is at issue, as contemplated by § 157(b)(2)(A), and that expeditious resolution of this dispute is most desirable, as contemplated by § 157(b)(2)(*O* ), so as to complete the asset distribution.

Finally, with regard to the "core v. non-core" inquiry, this action involves an interpretation of the scope of the "order approving the sale of [debtor's] property." Pursuant to 157(b)(2)(N), such an action falls within the non-exclusive list of core proceedings. Additionally, the Court notes that in denying Southwest's motion to dismiss, the Bankruptcy Court characterized this adversary proceeding as a core proceeding. Therefore, for this reason too, the Court believes that plaintiffs' complaint and Southwest's counterclaims constitute a core proceeding.

■ Next, there is no dispute that Southwest's counterclaims present legal rather than equitable issues. Therefore absent a waiver, Southwest would be entitled to a jury trial on these issues. Southwest argues that 28 U.S.C. § 157(h) permits the bankruptcy court to conduct a jury trial only if the district court designates the bankruptcy court with such jurisdiction, and even then only if the parties consent.[3] Further, Southwest asserts that the Seventh Amendment concerns reflected in that section are heightened with regard to non-core matters, which

Southwest contends this is. Underlying this argument is the provision of § 157 which requires de novo review of bankruptcy court findings on non-core issues. Southwest argues that the de novo review requirement would compel a district court to review a jury's findings, with no obligation to afford that jury any deference. *See, e.g., Slocum v. New York Life Ins. Co.*, 228 U.S. 364, 379, 33 S.Ct. 523, 529, 57 L.Ed. 879 (1913), *accord, In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449, 1453 (8th Cir.1990) (holding that § 157(c)(1), which requires district court de novo review of bankruptcy court's non-core proceedings, is "incompatible with any implications that Congress has provided the bankruptcy court the authority to try jury cases in non-core proceedings.").

■ Southwest's jury argument is unpersuasive. The Court has already determined that the issues involved here are "core" issues. Therefore, the only remaining question is whether Southwest has consented to the jurisdiction of the bankruptcy court and thus waived its right to a jury trial. A party in an adversary proceeding may waive its right to a jury trial by failing to timely demand a jury trial under Fed.R.Civ.P. 38. Southwest made such a timely demand in its answer to plaintiff's complaint. However, bankruptcy law has recognized another meaning of "waiver" with respect to jury trials, which is broader that the traditional concept acknowledged in the federal district courts. *Met–Al, Inc. v. Hansen Storage Co.*, 157 B.R. 993, 999 (E.D.Wis.1993). A litigant may also waive its Seventh Amendment right to a jury trial by consenting explicitly or tacitly to the jurisdiction of the bankruptcy court. *See, e.g., In re Dogpatch U.S.A., Inc.*, 810 F.2d 782, 785 & n. 3 (8th Cir.1987); *In re Hallahan*, 936 F.2d 1496 (7th Cir.1991). "The important factor in considering waiver ... is whether the party seeking a jury trial voluntarily brought the action in bankruptcy or was involuntarily joined as a party by another participant in the bankruptcy proceeding." *Mid American Concrete Constr.,*

---

3. Southwest cited § 157(h) for this proposition, however, because there is no § 157(h), the Court presumes Southwest is referring to § 157(e). Section 157(e) provides in relevant part that "the

bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.''

*Inc. v. Sears Roebuck & Co.,* 91–C–6286, 1993 WL 177140 (N.D.Ill. May 6, 1993).

Under the facts of this case, the Court finds that Southwest voluntarily subjected itself to the jurisdiction of the bankruptcy court. The Sale Agreement executed by Southwest and a representative of Starshak, on debtors' behalf, specifically provides that:

> The parties hereto agree that (i) any disputes or disagreements arising from or related to this [Sale] Agreement shall be submitted to and decided by the Bankruptcy Court; and (ii) said Bankruptcy Court shall be the sole and exclusive tribunal and forum for presentation and resolution of any such matters.

Southwest's Exh. B, p. 23–24 at § 13.3. In *In re Dogpatch U.S.A., Inc.,* the Eighth Circuit held that a similar clause in an asset sale agreement, which provided for the retention of jurisdiction by the bankruptcy court, gave rise to a "good argument" that the parties had consented to the jurisdiction of the bankruptcy court. *In re Dogpatch U.S.A., Inc.,* 810 F.2d at 785.

Finally, the Court has also considered issues relating to the efficient use of judicial resources and the avoidance of delay and increased costs to the parties. These considerations militate in favor of denying the motion to withdraw the reference. The underlying bankruptcy proceeding, to which this adversary proceeding is intimately related, is quite broad and complex. The bankruptcy court is already well versed in the facts of the case, as well as the proceedings to date. If this Court elected to withdraw the reference at this time, the parties would be significantly delayed in their efforts to reach a final disposition of this matter. Further, during that delay, assets of the estate would be encumbered, awaiting a final adjudication. Further, even if the current matter did not constitute a core proceeding or if Southwest had not consented to the jurisdiction of the bankruptcy court through its actions, the complexity of Southwest's proofs of claim and the asset calculations indicate the need for discovery and probable judicial oversight such that a withdrawal of the reference at this time would not be prudent. *See, e.g., In re Orion,* 4 F.3d 1095, 1101–02 (2d Cir.1993).

For all the foregoing reasons,

**IT IS HEREBY ORDERED** that the motion of Southwest Recreational Industries, Inc. to withdraw the reference of this matter to the United States Bankruptcy Court [Doc. # 16] is denied.